**SUMMONS ISSUED**

**CV 12 3048**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N Y

-----------------------------------------------------X

JOLENE MACCARONE,                          :

                     Plaintiff,      :

          -against-             :

AMITYVILLE UNION FREE SCHOOL          :
DISTRICT, JOHN WILLIAMS,               :
FRAN FERNANDEZ, and JOHN CHRIS        :
LAMARCA (Sued in their Official and    :
Individual Capacities pursuant to 42 U.S.C. :
§ 1983 and NYEL § 290 *et seq.*),        :

                Defendants.   :

-----------------------------------------------------X

★   JUN 19 2012   ★

**LONG ISLAND OFFICE'**

CV:

COMPLAINT

**JURY TRIAL DEMANDED**

**SPATT, J.**

**BOYLE, M**

Plaintiff, Jolene Maccarone, by her attorneys SCOTT MICHAEL MISHKIN, P.C.,

complaining of the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

This case is brought (1) pursuant to 42 U.S.C. § 1983 for deprivation of plaintiff's

Fourteenth Amendment rights based upon Defendants' arbitrary and irrational treatment of her

compared to similarly situated employees, as a result of her sexual orientation, which is in direct

violation of the Equal Protection Clause; (2) pursuant to the New York State Human Rights Law,

New York Executive Law §§ 290 *et seq.* ("NYEL") for Amityville Union Free School District's

("the District" and/or "Amityville") discrimination against plaintiff due to her sexual orientation;

(3) pursuant to NYEL for John Williams ("Williams"), Fran Fernandez ("Fernandez"), and John

Chris LaMarca's ("LaMarca") (collectively referred to as "defendants") aiding, abetting,

inciting, compelling, and/or coercing the District's discrimination against plaintiff due to her

sexual orientation; and (4) pursuant to NYEL for defendants' retaliation against plaintiff for

engaging in protected activity.

## JURISDICTION

FIRST:        The jurisdiction of the Court over this controversy is based upon 28

U.S.C. § 1331, as this matter is raised under 42 U.S.C. § 1983.

SECOND:        The Court also has supplemental jurisdiction over this case pursuant to 28

U.S.C. § 1367(a), as plaintiff's NYEL claims form part of the same case and controversy.

## VENUE

THIRD:        The unlawful practices alleged below were committed within the State of

New York, County of Suffolk.

FOURTH:        At the time of the unlawful practices, plaintiff was a resident of Suffolk

County in the Eastern District of the United States District Court of New York.

FIFTH:        Defendant District is a public school district located in Suffolk County in

the State of New York, organized and existing pursuant to the laws of the State of New York.

SIXTH:        This Court is hereby the proper venue under 28 U.S.C. § 1391(b).

## PARTIES

SEVENTH:        Plaintiff is currently employed at the District and continues to

satisfactorily perform all of her position responsibilities and duties at the District since the

commencement of her employment, in or about September 1995.

EIGHTH:        At all times relevant to this action, plaintiff was and is an "employee" as

defined by NYEL.

NINTH:        At all times relevant to this action, the District was and is an "employer"

as defined by NYEL.

2

TENTH:     Plaintiff's sexual orientation is lesbian/homosexual and she has held herself out to be a lesbian/homosexual throughout her entire employment at the District, and continues to do so.

ELEVENTH: The District has an official or customary practice that caused plaintiff to be subjected to the denial of her constitutional rights.

TWELFTH:   The District's inaction, demonstrated by its persistent failure to discipline the named defendants for violating plaintiff's civil rights, gives rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct.

THIRTEENTH:     Plaintiff, because of her sexual orientation, was treated differently by defendants, as compared to her similarly situated non-lesbian/homosexual co-workers, denying plaintiff of her equal protection rights due to her sexual orientation.

FOURTEENTH:     This selective treatment by defendants was motivated with the intent to discriminate against plaintiff on the basis of impermissible considerations, to wit, plaintiff's sexual orientation, and in bad faith with the intent to injure plaintiff, in violation of her Equal Protection rights.

FIFTEENTH: Defendants' arbitrary and irrational treatment of plaintiff was due to plaintiff's sexual orientation, and was therefore, in violation of plaintiff's equal protection rights.

SIXTEENTH: Defendants' actions towards plaintiff were not rationally related to any legitimate business purpose at the District.

SEVENTEENTH:     During all relevant times beginning as for and in regard to the causes of action herein, John Williams ("Williams") was the District's Superintendent and had the authority to hire, fire and discipline employees at the District.

EIGHTEENTH:     Williams had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment and adverse actions against plaintiff.

NINETEENTH:     Williams acted with the understanding that his actions violated clearly established legal rights of plaintiff.

TWENTIETH:     Williams, while acting under color of state law, actually participated in the conduct giving rise to plaintiff's equal protection claims and was motivated by discriminatory animus in insufficiently investigating and not punishing the discriminatory and retaliatory treatment against plaintiff.

TWENTY-FIRST:    Williams is named in his individual and official capacity because he knew, or should have known, that his and the District's ongoing/continuous willful and malicious actions against plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that plaintiff's rights were being violated.  As a result, Williams has waived his qualified immunity.

TWENTY-SECOND: The contour of plaintiff's right not to be discriminated against due to her sexual orientation, and to not be treated adversely as compared to her similarly situated non-lesbian/homosexual co-workers, is sufficiently clear that a reasonable official, such as Williams, should have known that the District's actions violated plaintiff's rights.

TWENTY-THIRD:    Williams and the District directly participated in the conduct complained of by plaintiff, while acting under color of State law, and their conduct deprived plaintiff of her rights, privileges or immunities secured by the Constitution or laws of the United States of America.

TWENTY-FOURTH: Williams arbitrarily, selectively and with malicious intent failed to follow through on any disciplinary action against the District employees who continuously discriminated, and retaliated against plaintiff, despite repeated requests by plaintiff for such action.

TWENTY-FIFTH:    The conduct that plaintiff complained of was severe or pervasive enough to result in an environment that would reasonably be perceived as hostile or abusive.

TWENTY-SIXTH:    The harassment in which plaintiff was subjected to by defendants is of such quality or quantity as to be severe or pervasive, therefore creating a hostile work environment.

TWENTY-SEVENTH:       Looking at the totality of circumstances, including the frequency of Williams and the District's conduct, its severity, that said conduct was humiliating, and that it interfered with the terms and conditions of plaintiff's employment, plaintiff has been subjected to a hostile work environment and continues to be.

TWENTY-EIGHTH: Williams and the District's failure to adequately respond to plaintiff's complaints denied plaintiff her Fourteenth Amendment right to equal protection on the basis of her sexual orientation.

TWENTY-NINTH:    Williams aided, abetted, incited, compelled, and/or coerced the District's discrimination against plaintiff based on her sexual orientation, as well as the retaliation against plaintiff for making complaints of same, in violation of NYEL.

THIRTIETH: During all relevant times beginning as for and in regard to the causes of action herein, Fran Fernandez ("Fernandez") was the Director of Fine Arts at the District and had the authority to hire, fire and discipline employees at the District.

THIRTY-FIRST:     As the Director of Fine Arts at the District, Fernandez acted as plaintiff's direct supervisor.

THIRTY-SECOND:   Fernandez had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment and adverse actions against plaintiff.

THIRTY-THIRD:     Fernandez acted with the understanding that her actions violated clearly established legal rights of plaintiff.

THIRTY-FOURTH:   Fernandez, while acting under color of state law, actually participated in the conduct giving rise to plaintiff's equal protection claims and was motivated by discriminatory animus in insufficiently investigating and not punishing the discriminatory and retaliatory treatment against plaintiff.

THIRTY-FIFTH:     Fernandez is named in her individual and official capacity because she knew, or should have known, that her and the District's ongoing/continuous willful and malicious actions against plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that plaintiff's rights were being violated.  As a result, Fernandez has waived her qualified immunity.

THIRTY-SIXTH:     The contour of plaintiff's right not to be discriminated against due to her sexual orientation, and to not be treated adversely as compared to her similarly situated non-lesbian/homosexual co-workers, is sufficiently clear that a reasonable official, such as Fernandez, should have known that her and the District's actions violated plaintiff's rights.

THIRTY-SEVENTH: Fernandez and the District directly participated in the conduct complained of by plaintiff, while acting under color of State law, and their conduct deprived

plaintiff of her rights, privileges or immunities secured by the Constitution or laws of the United States of America.

THIRTY-EIGHTH: Fernandez arbitrarily, selectively and with malicious intent failed to follow through on any disciplinary action against the District employees who continuously discriminated, and retaliated against plaintiff, despite repeated requests by plaintiff for such action.

THIRTY-NINTH: The conduct that plaintiff complained of was severe or pervasive enough to result in an environment that would reasonably be perceived as hostile or abusive.

FORTIETH: The harassment that plaintiff was subjected to by Fernandez and the District is of such quality or quantity as to be severe or pervasive, therefore creating a hostile work environment.

FORTY-FIRST: Looking at the totality of circumstances, including the frequency of Fernandez and the District's conduct, its severity, that said conduct was humiliating, and that it interfered with the terms and conditions of plaintiff's employment, plaintiff has been subjected to a hostile work environment and continues to be.

FORTY-SECOND: Fernandez and the District's failure to adequately respond to plaintiff's complaints denied plaintiff her Fourteenth Amendment right to equal protection on the basis of her sexual orientation.

FORTY-THIRD: Fernandez aided, abetted, incited, compelled, and/or coerced the District's discrimination against plaintiff based on her sexual orientation, as well as the retaliation against plaintiff for making complaints of same, in violation of NYEL.

FORTY-FOURTH: Fernandez actually participated in the conduct giving rise to Plaintiff's discrimination and retaliation claims and is thereby individually liable for her

discriminatory and retaliatory treatment and adverse action against plaintiff under NYEL §

296(6) *et seq.*

FORTY-FIFTH:     Fernandez is named in her official and individual capacity because

she knew or should have known that her and the District's ongoing and continuous willful and

malicious actions against plaintiff violated NYEL rights of plaintiff and she has therefore waived

her qualified immunity.

FORTY-SIXTH:     During all relevant times beginning as for and in regard to the

causes of action herein, John Chris LaMarca ("LaMarca") was the Music Department

Coordinator at the District and had the authority to hire, fire and discipline employees at the

District.

FORTY-SEVENTH:  As the Department Coordinator, LaMarca acted as plaintiff's direct

supervisor.

FORTY-EIGHTH:    LaMarca had the power to do more than carry out personnel

decisions made by others and is thereby individually liable for his discriminatory treatment and

adverse actions against plaintiff.

FORTY-NINTH:     LaMarca acted with the understanding that his actions violated

clearly established legal rights of plaintiff.

FIFTIETH:    LaMarca, while acting under color of state law, actually participated in the

conduct giving rise to plaintiff's equal protection claims and was motivated by discriminatory

animus in insufficiently investigating and not punishing the discriminatory and retaliatory

treatment against plaintiff.

FIFTY-FIRST:     LaMarca is named in his individual and official capacity because

he knew, or should have known, that his and the District's ongoing/continuous willful and

malicious actions against plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that plaintiff's rights were being violated.  As a result, LaMarca has waived his qualified immunity.

FIFTY-SECOND:    The contour of plaintiff's right not to be discriminated against due to her sexual orientation, and to not be treated adversely as compared to her similarly situated non-lesbian/homosexual co-workers, is sufficiently clear that a reasonable official, such as LaMarca, should have known that his and the District's actions violated plaintiff's rights.

FIFTY-THIRD:    LaMarca and the District directly participated in the conduct complained of by plaintiff, while acting under color of State law, and their conduct deprived plaintiff of her rights, privileges or immunities secured by the Constitution or laws of the United States of America.

FIFTY-FOURTH:    LaMarca arbitrarily, selectively and with malicious intent failed to follow through on any disciplinary action against the District employees who continuously discriminated, and retaliated against plaintiff, despite repeated requests by plaintiff for such action.

FIFTY-FIFTH:    The conduct that plaintiff complained of was severe or pervasive enough to result in an environment that would reasonably be perceived as hostile or abusive.

FIFTY-SIXTH:    The harassment that plaintiff was subjected to by LaMarca and the District is of such quality or quantity as to be severe or pervasive, therefore creating a hostile work environment.

FIFTY-SEVENTH:    Looking at the totality of circumstances, including the frequency of LaMarca and the District's conduct, its severity, that said conduct was humiliating, and that it

interfered with the terms and conditions of plaintiff's employment, plaintiff has been subjected to a hostile work environment and continues to be.

FIFTY-EIGHTH:     LaMarca and the District's failure to adequately respond to plaintiff's complaints denied plaintiff her Fourteenth Amendment right to equal protection on the basis of her sexual orientation.

FIFTY-NINTH:     LaMarca aided, abetted, incited, compelled, and/or coerced the District's discrimination against plaintiff based on her sexual orientation, as well as retaliation against plaintiff for making complaints of same, in violation of NYEL.

SIXTIETH:    LaMarca actually participated in the conduct giving rise to Plaintiff's discrimination and retaliation claims and is thereby individually liable for his discriminatory and retaliatory treatment and adverse action against plaintiff under NYEL § 296(6) *et seq.*

SIXTY-FIRST:     LaMarca is named in his official and individual capacity because he knew or should have known that his and the District's ongoing and continuous willful and malicious actions against plaintiff violated NYEL rights of plaintiff and he has therefore waived his qualified immunity.

## FACTS

SIXTY-SECOND:    Plaintiff began her career at the District in or about 1995, as a music teacher.

SIXTY-THIRD:     Plaintiff has been employed by the District for the past seventeen years and has received tenure at the District as a Music Teacher K-12.

SIXTY-FOURTH:     As a tenured music teacher for grades K-12, plaintiff is authorized to teach in any subject area and teacher position throughout the District.

10

SIXTY-FIFTH:      Although plaintiff is a music teacher, her strengths are in percussion and in band.

SIXTY-SIXTH:      Plaintiff was hired at the District to teach band at the secondary level and did so for many years.

SIXTY-SEVENTH:   In fact, for much of plaintiff's employment, she held the position of High School Band director.

SIXTY-EIGHTH:     As the High School band director, plaintiff taught band at the High School level, for all periods of her workday.

SIXTY-NINTH:      As the High School band director, other than teaching, plaintiff was responsible for the marching events throughout the community, as well as any community and/or District festivals, and/or band events.

SEVENTIETH:       Plaintiff is a lesbian/homosexual and has been married to her wife since on or about August 7, 2007.

SEVENTY-FIRST:    Plaintiff's wife, although not currently employed at the District, acted as the president of the Parent-Teacher Association ("PTA") within the District for approximately twelve (12) years, and ran for a spot on the District's Board of Education.

SEVENTY-SECOND:      Plaintiff's wife also had a daughter that attended school within the District and graduated High School from within the District.

SEVENTY-THIRD:   Prior to plaintiff's marriage to her wife, the two (2) dated for many years.

SEVENTY-FOURTH:      At that time, plaintiff was an employee of the District and her wife was acting as the PTA president, as well as running to be a member of the Board of Education.

11

SEVENTY-FIFTH:   Upon information and belief, it is, and has been, common knowledge throughout the District that plaintiff is a lesbian/homosexual, and likewise, that she was in a relationship with, and is currently married to, her wife, Justine Baldwin.

SEVENTY-SIXTH:   As a result of plaintiff's sexual orientation, she has been discriminated against and treated adversely by the defendants, as compared to her similarly situated non-lesbian/homosexual co-workers, denying plaintiff of her equal protection rights due to her sexual orientation.

SEVENTY-SEVENTH:      The discrimination against plaintiff began as early as the 2003/2004, school year and has been ongoing and continuous through up to and including the current date, therefore amounting to a continuing violation.

SEVENTY-EIGHTH: Since in or about the 2003/2004 school year, the District has engaged in a custom and practice of discriminating against plaintiff on the basis of her sexual orientation and has permitted defendants Fernandez and LaMarca, as well as other employees of the District, to do the same.

SEVENTY-NINTH:   Since in or about 2003/2004, to the current date, plaintiff has made numerous complaints to the district regarding the discrimination and harassment that she has been subjected to as a result of her sexual orientation and the District has therefore been on notice of said harassment for many years.

EIGHTIETH:  Despite plaintiff's many complaints to the District, nothing has been done protect her equal protection rights, and in fact, she has been subjected to further retaliation as a result of her complaints.

12

EIGHTY-FIRST: For many years, when plaintiff was the High School Band Director, she participated in extracurricular band and/or marching events and received a stipend for same.

EIGHTY-SECOND: As the Band Director, there were many opportunities available for plaintiff to earn extra compensation in the form of stipends.

EIGHTY-THIRD: However, plaintiff has recently been denied said opportunities, upon information and belief, due to her sexual orientation.

EIGHTY-FOURTH: As early on as the school year of 2003/2004, plaintiff has suffered from discriminatory transfers throughout the entire District and continues to suffer from same.

EIGHTY-FIFTH: Specifically, plaintiff has been completely transferred out of the high school and has consistently been denied the HS Band Director position, despite the fact that she was hired for same.

EIGHTY-SIXTH: Currently, plaintiff does not hold any teaching position at the HS, but rather, has been reassigned to the Elementary School, despite that plaintiff's strengths are in HS percussion and band.

EIGHTY-SEVENTH: Currently, plaintiff has been assigned to two (2) different schools within the District and is required to split her day between those schools.

EIGHTY-EIGHTH: Plaintiff was hired as a high school band teacher, and as such, was responsible for teaching band to high school students for all periods of her workday.

EIGHTY-NINTH: Rather, now, plaintiff has been completely removed from the high school and has been assigned to elementary school students for much of her day.

NINETIETH: As a result of having been transferred out of the high school, plaintiff cannot participate in many extracurricular activities and/or marching band events, and is

therefore being denied the opportunity to earn additional compensation/stipends, in violation of her equal protection rights.

NINETY-FIRST:     Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers that were assigned to teach high school courses were not transferred to the elementary school, but rather, are permitted to teach at the high school level for all periods of their workday.

NINETY-SECOND:   Upon information and belief, those similarly situated high school teachers are not denied opportunities to earn additional compensation by participating in high school events, such as marching band.

NINETY-THIRD:    Upon information and belief, plaintiff's similarly situated non-Lesbian/homosexual co-workers have not been transferred out of their positions and denied said opportunities to earn additional compensation.

NINETY-FOURTH:   Upon information and belief, the District is violating its own policies and procedures by not affording plaintiff the same opportunities as her similarly situated non-lesbian/homosexual co-workers, and is therefore, denying plaintiff her equal protection rights.

NINETY-FIFTH:    Fran Fernandez ("Fernandez") is the current Director of the Music and Arts Department at the District, and upon information and belief, is responsible for supervising all of the teachers that work within that department.

NINETY-SIXTH:    As a music teacher at the District, plaintiff works in the Music and Arts department and therefore falls under the supervision of Fernandez.

NINETY-SEVENTH:  Upon information and belief, Fernandez, as the Department Director, is responsible for assignment of music teachers within the Music and Arts Department.

NINETY-EIGHTH:   Upon information and belief, Fernandez is responsible for plaintiff's transfer out of the high school to the elementary school, as well as denying plaintiff the opportunity to earn stipends through band events.

NINETY-NINTH:     Specifically, plaintiff has confronted Fernandez on a number of occasions to inquire about the HS Band Director Position, as well as HS extracurricular activities.

ONE HUNDREDTH: Fernandez has arbitrarily denied plaintiff the opportunity to teach band at the HS level, as plaintiff was hired to do, and has not given plaintiff any justification for same.

ONE HUNDRED FIRST:     Likewise, Fernandez has arbitrarily denied plaintiff the opportunity to earn additional compensation through extracurricular activities, while granting plaintiff's similarly situated non-lesbian/homosexual co-workers the opportunity to earn same.

ONE HUNDRED SECOND: Upon information and belief, it was Fernandez that removed plaintiff from her HS band position and continues to transfer plaintiff throughout the district year after year.

ONE HUNDRED THIRD:    Upon information and belief, Fernandez's continuous transfers of plaintiff are motivated by her animus against plaintiff based on plaintiff's sexual orientation, as Fernandez has not treated plaintiff's similarly situated non-lesbian/homosexual co-workers in a similar manner.

ONE HUNDRED FOURTH: Upon information and belief, the amount of transfers that plaintiff has been subjected to is excessive as compared to the transfers of her similarly situated non-lesbian/homosexual co-workers.

ONE HUNDRED FIFTH:     Upon information and belief, the defendants are in violation of their own policies and procedures by excessively transferring plaintiff and denying plaintiff opportunities to earn compensation, while not restricting plaintiff's similarly situated non-lesbian/homosexual co-workers for same.

ONE HUNDRED SIXTH:     In fact, when plaintiff recently inquired about the HS Director position, Fernandez denied plaintiff the opportunity, and granted the position to a similarly situated non-lesbian/homosexual teacher with less experience and less seniority than plaintiff, therefore denying plaintiff of her equal protection rights due to her sexual orientation.

ONE HUNDRED SEVENTH:     Upon information and belief, said teacher had never taught a band class before and has just recently graduated college, yet he was given the position and plaintiff was denied same without justification.

ONE HUNDRED EIGHTH:  Further, plaintiff is routinely transferred from building to building within the District, with little to no notice.

ONE HUNDRED NINTH:     Specifically, plaintiff is often not told what her classroom assignment is going to be until the first day of the new school year.

ONE HUNDRED TENTH:     Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers are given their classroom assignments prior to the beginning of the school year.

ONE HUNDRED ELEVENTH:     Upon information and belief, defendants' own policies and procedures require that teachers receive their classroom assignments prior to the first day of school.

ONE HUNDRED TWELFTH:     Upon information and belief, defendants selectively enforced their own policies and customary practices and discriminated against plaintiff on the

basis of her sexual orientation by applying said policies to her similarly situated non-lesbian/homosexual co-workers, while not applying same to plaintiff.

ONE HUNDRED THIRTEENTH:    On a number of occasions, plaintiff was transferred from one school to another after the school year had already begun.

ONE HUNDRED FOURTEENTH:   Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers were not transferred mid-year.

ONE HUNDRED FIFTEENTH:    Additionally, since in or about the 2008/2009 school year, plaintiff has routinely been assigned to different classes and different schools within the District.  As such, plaintiff is never certain what school she is going to teach in, and is not given the same opportunity as other teachers to develop strengths in one subject area or grade level.

ONE HUNDRED SIXTEENTH:    Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers are consistently assigned to the same classroom or schools, and are not required to transfer each year.

ONE HUNDRED SEVENTEENTH: Since on or about the school year of 2008/2009, plaintiff has been denied every request to fill the HS Band Director position.

ONE HUNDRED EIGHTEENTH:    Since on or about the school year of 2008/2009, plaintiff has been denied almost every request to participate in extracurricular activities and/or marching band events, causing her to lose out on additional compensation/stipends that her similarly situated non-lesbian/homosexual co-workers are permitted to earn.

ONE HUNDRED NINETEENTH:    Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers were not denied opportunities to earn additional

compensation/stipends at the District, and were not arbitrarily denied opportunities to participate in extracurricular activities.

ONE HUNDRED TWENTIETH:     Currently, plaintiff does not hold any positions in a marching band, nor does she have any extracurricular activities, as defendants have denied her all requests for same.

ONE HUNDRED TWENTY-FIRST:As a result of the Districts' conduct, plaintiff has complained to her principals on many occasions since in or about the 2008/2009 school year.

ONE HUNDRED TWENTY-SECOND:     Specifically, she has complained to her principals that she was constantly being transferred around the District, and that her requests for class assignments and extracurricular activities were routinely denied, without any justification.

ONE HUNDRED TWENTY-THIRD:      Further, plaintiff complained that she believed the denials of her requests, as well as the Districts routine transfers of classroom assignments, were due to her sexual orientation, as she noticed that her straight co-workers were not being subjected to same.

ONE HUNDRED TWENTY-FOURTH:     Despite plaintiff's many complaints, nothing was done, and no investigation was conducted into the discriminatory practices of the District, specifically, that plaintiff was being treated differently than her similarly situated non-lesbian/homosexual co-workers, therefore denying plaintiff of her equal protection rights due to her sexual orientation.

ONE HUNDRED TWENTY-FIFTH:      Upon information and belief, as the superintendent of the District, Williams was aware of plaintiff's complaints and failed to investigate or cure same.

ONE HUNDRED TWENTY-SIXTH:      Upon information and belief, Williams, as the superintendent, was responsible for conducting an investigation into plaintiff's complaints and for enforcing the district's own anti-harassment policies, but failed to do same.

ONE HUNDRED TWENTY-SEVENTH:    Upon information and belief, as the superintendent of the District, Williams was responsible for making sure that the policies and procedures at the District were enforced in a non-discriminatory manner.

ONE HUNDRED TWENTY-EIGHTH:      Upon information and belief, members of the Board of Education at the District also have influence over teacher assignments throughout the District.

ONE HUNDRED TWENTY-NINTH:       Upon information and belief, certain members of the Board of Education have discriminated against plaintiff on the basis of her sexual orientation and have caused her to be continuously transferred throughout the District in an attempt to force plaintiff into resigning from her employment.

ONE HUNDRED THIRTIETH:      Upon information and belief, the Board of Education at the District played a role in assigning and/or placing personnel into certain positions within the District, and as such, played a role in the discriminatory placements and transfers of plaintiff.

ONE HUNDRED THIRTY-FIRST:  Upon information and belief, members of the Board are aware of plaintiff's sexual orientation, as they are aware of plaintiff's marriage to Justine Baldwin, who was the president of the PTA for twelve years.

ONE HUNDRED THIRTY-SECOND:      Specifically, Kathy Ward and Michelle Sikhrangker were members of the Board, and were aware of plaintiff's marriage to Justine Baldwin, as prior to the marriage, they were very close friends with Justine.

ONE HUNDRED THIRTY-THIRD: After plaintiff married Justine, both Kathy and Michelle began to ignore Justine when they saw her, and they discontinued their friendship with her.

ONE HUNDRED THIRTY-FOURTH:     Upon information and belief, both Kathy and Michelle, as members of the board, assisted in the defendants' discriminatory practices against plaintiff by participating in having plaintiff transferred, as well as having her placement requests denied.

ONE HUNDRED THIRTY-FIFTH: Further, Kathy's husband, Gary Ward, is a monitor within the District, and is very open about his disapproval of homosexuals.

ONE HUNDRED THIRTY-SIXTH: Specifically, while in the classroom directly across from plaintiff's, he routinely commented that "the goddamn gays were taking over the world."

ONE HUNDRED THIRTY-SEVENTH:     Upon information and belief, Gary Ward intentionally made the comment loud enough for plaintiff, as well as her students, to hear it.

ONE HUNDRED THIRTY-EIGHTH:     In addition, Gary Ward was heard publicly commenting on his disapproval of homosexuals on many other occasions, while working as a monitor at the District.

ONE HUNDRED THIRTY-NINTH: On one occasion, plaintiff's stepdaughter, who was a student at the high school, visited plaintiff for the day at the school she was assigned to.

ONE HUNDRED FORTIETH:     As the two were walking down the hallway, they passed Gary Ward, and plaintiff's stepdaughter said "hello."

ONE HUNDRED FORTY-FIRST:   When plaintiff's stepdaughter turned to look at Mr. Ward, she noticed that he was holding up his middle finger at plaintiff behind her back.

ONE HUNDRED FORTY-SECOND:        When plaintiff learned of this incident, she reported it to the principal at the time, and further advised that Mr. Ward was often heard across the hallway commenting about his disapproval of homosexuals, and that she wanted him to keep his opinion about gay people to himself and to act professional.

ONE HUNDRED FORTY-THIRD:  Upon information and belief, no investigation was conducted and the District took no action.

ONE HUNDRED FORTY-FOURTH:        Upon information and belief, the District, in accordance with its own policies and procedures, should have conducted a complete investigation and should have taken necessary action.

ONE HUNDRED FORTY-FIFTH:   Upon information and belief, the District, in accordance with its own policies and procedures, took action in response to the complaints made by plaintiff's similarly situated non-lesbian/homosexual co-workers.

ONE HUNDRED FORTY-SIXTH:   Upon information and belief, on another occasion, LaMarca was overhead making derogatory statements to students about plaintiff being a lesbian/homosexual, and about her being married to a woman.

ONE HUNDRED FORTY-SEVENTH:        Upon information and belief, plaintiff's stepdaughter was present when LaMarca was making said comments and overheard him telling other students.

ONE HUNDRED FORTY-EIGHTH:        Plaintiff complained to administration about LaMarca's, but upon information and belief, nothing was done.

ONE HUNDRED FORTY-NINTH:  On another occasion, plaintiff joined a jazz ensemble within the Amityville community and played in an event as a drummer.

ONE HUNDRED FIFTIETH:        After the event, one of the ensemble members approached plaintiff and advised plaintiff that LaMarca, who had also played in the ensemble, often referred to plaintiff as "the devil," and said that plaintiff was a "dike," and that her friendliness towards guys was just to lead them on.

ONE HUNDRED FIFTY-FIRST:     Upon information and belief, LaMarca's comments to members of the jazz ensemble are an indication of his attitude and disapproval towards homosexuals.

ONE HUNDRED FIFTY-SECOND: Upon information and belief, as the Music Department Coordinator, LaMarca, along with Fernandez, was responsible for assigning teaching positions to teachers within the Music Department.

ONE HUNDRED FIFTY-THIRD:     Upon information and belief, LaMarca, along with Fernandez, was responsible for routinely transferring plaintiff throughout the District, and for routinely denying plaintiff's requests for position assignments and extracurricular activities.

ONE HUNDRED FIFTY-FOURTH: Plaintiff has complained to the District about LaMarca, however, nothing has been done.

ONE HUNDRED FIFTY-FIFTH:     Upon information and belief, LaMarca continues to make comments to plaintiff's co-workers about her sexual orientation, further contributing to the hostile work environment that plaintiff is subjected to.

ONE HUNDRED FIFTY-SIXTH:     Upon information and belief, LaMarca continues to make derogatory comments about plaintiff to her co-workers, in an attempt to turn plaintiff's co-workers against her.

ONE HUNDRED FIFTY-SEVENTH:        Upon information and belief, LaMarca does not make comments about plaintiff's non-lesbian/homosexual co-workers, nor does he routinely transfer them or arbitrarily deny their requests for assignments and extracurricular activities.

ONE HUNDRED FIFTY-EIGHTH: Shortly after complaining about LaMarca to the principal, plaintiff found her car tire slashed on District property, upon information and belief, in retaliation for her complaint.

ONE HUNDRED FIFTY-NINTH:    Upon information and belief, LaMarca, as well as Fernandez, openly voice their disapproval of homosexuals, and of plaintiff's sexual orientation.

ONE HUNDRED SIXTIETH:        In or about the 2009/2010 school year, plaintiff was assigned to a sixth grade beginner band.

ONE HUNDRED SIXTY-FIRST:    Plaintiff was given a lesson schedule by Fernandez that required students to attend band lessons during their foreign language requirement and/or their lunch period. As a result, many students dropped out of band.

ONE HUNDRED SIXTY-SECOND:Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers were not given similar lesson schedules by Fernandez, and were given opportunities to properly prepare their students.

ONE HUNDRED SIXTY-THIRD:    In an attempt to accommodate the students, plaintiff began giving lessons during her own lunch period, and by the end of the school year, the students were proficient in their instruments, performed well in the spring concert, and are still in the band program today.

ONE HUNDRED SIXTY-FOURTH:In or about 2010, plaintiff was advised by Fernandez that her percussion ensemble students were only permitted to have bi-weekly lessons.

ONE HUNDRED SIXTY-FIFTH:    Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers, including band and orchestra teachers, were permitted to give weekly lessons to their students, denying plaintiff of her equal protection rights due to her sexual orientation.

ONE HUNDRED SIXTY-SIXTH:    Nonetheless, plaintiff prepared her percussion students for the NYSSMA Solo and Ensemble festival, which included training for sight-reading.

ONE HUNDRED SIXTY-SEVENTH:       For two (2) years straight, plaintiff's students received the highest scores of outstanding and perfect scores at the NYSMMA Solo and Ensemble Festival.

ONE HUNDRED SIXTY-EIGHTH: However, Fernandez further discriminated against plaintiff on the basis of her sexual orientation, and gave plaintiff a negative evaluation and told her that she was not happy with her student's sight-reading skills.

ONE HUNDRED SIXTY-NINTH:    Upon information and belief, Fernandez was discriminating against plaintiff on the basis of her sexual orientation and was denying plaintiff of her equal protection rights by treating plaintiff differently as compared to her non-lesbian/homosexual co-workers.

ONE HUNDRED SEVENTIETH:    In or about 2010, plaintiff applied to chaperone an upcoming SCMEA event but she was arbitrarily denied, despite her experience in the area, while a less-experienced similarly situated non-lesbian/homosexual co-worker was given the chaperone position.

ONE HUNDRED SEVENTY-FIRST:       In or about 2010, plaintiff requested that she be permitted to take her percussion students to the SCMEA Percussion Day, but her request was denied, without any justification.

ONE HUNDRED SEVENTY-SECOND:     Upon information and belief, plaintiff's similarly situated non-lesbian/homosexual co-workers were permitted to go with their students.

ONE HUNDRED SEVENTY-THIRD:       Specifically, Joe, a heterosexual male, was permitted to go to SCMEA Horn Day with his students; Debbie, a heterosexual female, was permitted to go to SCMEA Flute Day with her students; Leonora and Christine, heterosexual females, were permitted to go to SCMEA Peak Festival with their students; and Brian, a heterosexual male, was permitted to go to SCMEA All State Festival with his students.

ONE HUNDRED SEVENTY-FOURTH:     The defendants' denial of plaintiff's request to go to SCMEA was a violation of her equal protection rights, as her similarly situated non-lesbian/homosexual co-workers were permitted to do same.

ONE HUNDRED SEVENTY-FIFTH:       In or about 2010, plaintiff put in a request and a budget proposal to start a steel band but she never received a response from Fernandez.

ONE HUNDRED SEVENTY-SIXTH:       Shortly after, plaintiff learned from Brian, a similarly situated non-lesbian/homosexual co-worker of hers, that Fernandez was permitting Brian to start a steel band.

ONE HUNDRED SEVENTY-SEVENTH:   In or about 2010, plaintiff emailed Fernandez about beginning a Jazz Band at one of the schools, but Fernandez never responded.

ONE HUNDRED SEVENTY-EIGHTH:     Upon information and belief, Fernandez responded to, and often granted, the proposals of plaintiff's similarly situated non-lesbian/homosexual co-workers, therefore denying plaintiff of her equal protection rights due to her sexual orientation.

ONE HUNDRED SEVENTY-NINTH:      For the past few years plaintiff has been volunteering to teach the drum line at the high school for marching band camp, but her requests have been ignored.

ONE HUNDRED EIGHTIETH:      In or about the 2011/2012 school year, plaintiff learned that a former student of the District, non-lesbian/homosexual, has been given the drum line position, despite the fact that plaintiff has over fifteen (15) years experience with competitive marching bands.

ONE HUNDRED EIGHTY-FIRST:  To date, plaintiff continues to be transferred throughout the District and treated differently than her similarly situated non-lesbian/homosexual co-workers.

ONE HUNDRED EIGHTY-SECOND:      Plaintiff is unhappy with her current assignment, as she has been completely transferred out of the high school, and has been denied of all opportunities to earn additional compensation/stipends, while her similarly situated non-lesbian/homosexual co-workers are given opportunities for same.

ONE HUNDRED EIGHTY-THIRD: Upon information and belief, plaintiff is also not given the appropriate amount of preparation time to properly prepare her students, as compared to the amount of preparation time given to her non-lesbian/homosexual co-workers.

ONE HUNDRED EIGHTY-FOURTH:      As a result of the ongoing and continuous disparate treatment that plaintiff has been treated to, and the outright denial of her equal protection rights, plaintiff made a formal complaint to the District on or about September 12, 2011.

ONE HUNDRED EIGHTY-FIFTH: Specifically, plaintiff complained about the ongoing continuous transfers throughout the District, the ongoing and continuous harassment that she had

been subjected to as a result of her sexual orientation, the Music Ensemble and Band programs having been taken away from her, and the disparate treatment that she was subjected to as a result of her sexual orientation.

ONE HUNDRED EIGHTY-SIXTH: Further, plaintiff complained that Fernandez permitted her similarly situated non-lesbian/homosexual co-workers to submit their lesson plans via e-mail, while requiring plaintiff to physically deliver her lesson plans to the office.

ONE HUNDRED EIGHTY-SEVENTH:     Plaintiff had a good faith reasonable belief that the defendants were discriminating against her and that she was being treated adversely as compared to her similarly situated non-lesbian/homosexual co-workers.

ONE HUNDRED EIGHTY-EIGHTH:     Upon information and belief, despite plaintiff's complaints of disparate treatment and harassment due to her sexual orientation, the District failed to conduct any investigation, in violation of its own anti-harassment policies.

ONE HUNDRED EIGHTY-NINTH: Upon information and belief, as the superintended of the District, Williams had knowledge of plaintiff's transfers throughout the District and the denial of her requests, as well as her complaints of disparate treatment, yet he did not cause any investigation to be conducted, nor did he take any action to stop the harassment.

ONE HUNDRED NINETIETH:     In fact, despite plaintiff's complaints, she was subjected to further disparate treatment, as well as retaliation.

ONE HUNDRED NINETY-FIRST:  In or about March 2012, a middle school band director left on maternity leave and a former employee with no band experience was re-hired to replace her.

ONE HUNDRED NINETY-SECOND:     Upon information and belief, this former employee does not have any band experience and admits that she does not know what she is doing.

ONE HUNDRED NINETY-THIRD: As this teacher had taught plaintiff's current class last school year, she would have been a better fit there, and plaintiff, having more experience in band, would have been perfect for the middle school band director position.

ONE HUNDRED NINETY-FOURTH:     However, despite plaintiff's requests for said position, it was given to a less experienced non-lesbian/homosexual teacher.

ONE HUNDRED NINETY-FIFTH:  In or about May 2012, plaintiff was called into the principal's office, and was told to bring a union representative, because of an incident report that she hade written up on two students that both made physical contact with plaintiff.

ONE HUNDRED NINETY-SIXTH:  At the meeting, plaintiff was told that she had provoked the students to hit her because she stood in the doorway.

ONE HUNDRED NINETY-SEVENTH:     Upon information and belief, no investigation was conducted into the incident and no disciplinary action was taken against either student.

ONE HUNDRED NINETY-EIGHTH:     Rather, plaintiff was wrongfully accused of provoking the students.

ONE HUNDRED NINETY-NINTH: Upon information and belief, defendants failed to follow their own policies and procedures by not conducting an investigation, and therefore denied plaintiff her equal protection rights due to her sexual orientation.

TWO HUNDREDTH:     Upon information and belief, an investigation would have been conducted, and the students would have been disciplined, for plaintiff's similarly situated

non-lesbian/homosexual co-workers.

TWO HUNDRED FIRST:    Upon information and belief, some of plaintiff's similarly situated non-lesbian/homosexual co-workers have been written up for alleged inappropriate misconduct with students and have not been removed from their positions, and/or routinely transferred throughout the District.

TWO HUNDRED SECOND: Upon information and belief, said teachers are still teaching in their former positions and were not disciplined for the accusations made against them.

TWO HUNDRED THIRD:    In or about May 2012, the health teacher asked plaintiff if she would put together a slide presentation for the morning announcements about the "National Day of Silence."

TWO HUNDRED FOURTH: The "National Day of Silence" is a nation wide event recognizing the bullying of gay and lesbian students in schools throughout the country, by remaining silent for the day.

TWO HUNDRED FIFTH:    The purpose of the event is to recognize the gay and lesbian children who feel that they have lost their voice and are being bullied in school.

TWO HUNDRED SIXTH:    When the principal previewed plaintiff's slide presentation, she told plaintiff to make it shorter and to focus on no tolerance for bullying, rather then the "gay issue".

TWO HUNDRED SEVENTH:      Further, she told plaintiff that due to the District's large religious demographic, she did not want the District to seem as if they were "promoting homosexuality."

TWO HUNDRED EIGHTH: Upon information and belief, the principal's statements are an indication of overall tone of the District's stand on homosexuality.

TWO HUNDRED NINTH:   To date, plaintiff continues to be treated differently than her similarly situated non-lesbian/homosexual co-workers.

TWO HUNDRED TENTH:   Defendants' disparate treatment, and denial of equal protection to plaintiff on the basis of her sexual orientation, has been ongoing and continuous, and therefore amounts to a continuing violation.

TWO HUNDRED ELEVENTH:     To date, plaintiff continues to be retaliated against for her many complaints to administration about defendants' disparate treatment of her, as compared to similarly situated non-lesbian/homosexual co-workers.  Specifically, plaintiff's requests for  classroom assignments are routinely denied, she is denied opportunities to earn additional compensation, and she is under constant scrutiny from the defendants.

TWO HUNDRED TWELFTH:     Defendants have violated plaintiff's equal protection rights by failing to follow its own policies and procedures and by applying them selectively to plaintiff's similarly situated co-workers, while failing to apply same to plaintiff.

TWO HUNDRED THIRTEENTH:     Defendants treated plaintiff differently than other similarly-situated non-lesbian/homosexual employees in the District by, including but not limited to, failing to properly investigate plaintiff's many complaints him, failing to prevent and/or stop derogatory comments made about plaintiff's sexual orientation, failing to grant plaintiff's requests for extracurricular activities, and transferring plaintiff all throughout the District.

ONE HUNDRED TENTH:   Defendants' disparate treatment of plaintiff was motivated by an intent to discriminate against plaintiff on the basis of her perceived sexual orientation and/or by a malicious or bad faith intent to injure plaintiff.

ONE HUNDRED ELEVENTH:      Defendants willfully and purposefully violated the District's policies or customs by, including but not limited to, failing to properly investigate complaints made by plaintiff, failing to prevent and/or stop derogatory comments made about her sexual orientation, and failing to investigate allegations made by students, all in direct violation of her equal protection rights.

ONE HUNDRED TWELFTH:      Despite the permanent and pervasive harm to plaintiff's reputation, fitness and character, no disciplinary action was taken against the individual defendants for the inappropriate actions they took based on plaintiff's sexual orientation, thus denying plaintiff of her Fourteenth Amendment right to equal protection.

ONE HUNDRED THIRTEENTH:      This arbitrary and selective action by the District evidences its bad faith intent to cause plaintiff injury, as other similarly situated employees were not treated in such a malicious manner.

ONE HUNDRED FOURTEENTH:   Due to Defendants' selective and arbitrary treatment of plaintiff on account of her sexual orientation, and their bad faith intent to cause her harm, plaintiff has suffered physical and mental anguish and severe emotional distress.

ONE HUNDRED NINETEENTH:   As a result of defendants' disparate treatment toward Plaintiff, which was motivated with discriminatory intent due to plaintiff's sexual orientation, plaintiff has suffered damages.

ONE HUNDRED TWENTIETH:      Plaintiff has suffered adverse employment actions as a result of being subjected to defendants' discriminatory treatment based on her sexual orientation, as well as defendants' retaliation for plaintiff's complaints of same.

ONE HUNDRED TWENTY-FIRST:Defendants' adverse employment actions against plaintiff give rise to an inference of discrimination based upon plaintiff's sexual orientation, and retaliation, as described herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

1.      For a money judgment to be determined by a jury representing actual damages for the District's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

2.      For a money judgment to be determined by a jury representing compensatory damages for the District's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

3.      For a money judgment to be determined by a jury representing emotional damages for the District's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

4.      For a money judgment to be determined by a jury representing punitive damages for the District's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

5.      For a money judgment to be determined by a jury representing actual damages for defendant Williams' denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

6.      For a money judgment to be determined by a jury representing compensatory damages for defendant Williams' denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

7.      For a money judgment to be determined by a jury representing emotional damages for defendant Williams' denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

8.      For a money judgment to be determined by a jury representing punitive damages for defendant Williams' denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

9.      For a money judgment to be determined by a jury representing actual damages for defendant Fernandez's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

10.      For a money judgment to be determined by a jury representing compensatory damages for defendant Fernandez's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

11.      For a money judgment to be determined by a jury representing emotional damages for defendant Fernandez's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

12.      For a money judgment to be determined by a jury representing punitive damages for defendant Fernandez's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

13.      For a money judgment to be determined by a jury representing actual damages for defendant LaMarca's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

14.    For a money judgment to be determined by a jury representing compensatory damages for defendant LaMarca's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

15.    For a money judgment to be determined by a jury representing emotional damages for defendant LaMarca's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

16.    For a money judgment to be determined by a jury representing punitive damages for defendant LaMarca's denial of Plaintiff's Fourteenth Amendment Equal Protection Rights in violation of 42 U.S.C. § 1983;

17.    For a money judgment representing actual damages for the District's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

18.    For a money judgment representing compensatory damages for the District's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

19.    For a money judgment representing emotional damages for the District's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

20.    For a money judgment representing actual damages for defendant Williams' discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

21.     For a money judgment representing compensatory damages for defendant Williams' discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

22.     For a money judgment representing emotional damages for defendant Williams' discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

23.     For a money judgment representing actual damages for defendant Fernandez's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

24.     For a money judgment representing compensatory damages for defendant Fernandez's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

25.     For a money judgment representing emotional damages for defendant Fernandez's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

26.     For a money judgment representing actual damages for defendant LaMarca's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

27.     For a money judgment representing compensatory damages for defendant LaMarca's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

28.     For a money judgment representing emotional damages for defendant LaMarca's discrimination against plaintiff due to her sexual orientation in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

29.     For a money judgment representing actual damages for the District's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

30.     For a money judgment representing compensatory damages for the District's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

31.     For a money judgment representing emotional damages for the District's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

32.     For a money judgment representing actual damages for defendant Williams' retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

33.     For a money judgment representing compensatory damages for defendant Williams' retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

34.     For a money judgment representing emotional damages for defendant Williams' retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

35.     For a money judgment representing actual damages for defendant Fernandez's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

36.     For a money judgment representing compensatory damages for defendant Fernandez's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

37.     For a money judgment representing emotional damages for defendant Fernandez's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

38.     For a money judgment representing actual damages for defendant LaMarca's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

39.     For a money judgment representing compensatory damages for defendant LaMarca's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

40.     For a money judgment representing emotional damages for defendant LaMarca's retaliation against plaintiff in violation of NYEL § 290 *et seq.*, in an amount to be determined by a jury.

41.     For equitable and injunctive relief;

42:     For reasonable attorney's fees and costs; and

43.   For such other relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated:  Islandia, New York
       June 19, 2012

                            **SCOTT MICHAEL MISHKIN, P.C.**

By:   Kyle T. Pulis, Esq. (KP0415)
      One Suffolk Square, Suite 240
      Islandia, New York 11749
      Telephone: 631-234-1154
      Facsimile:  631-234-5048
      *Attorneys for Plaintiff*